IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

_____
                            :

ANTHONY ALLEN, et al.,       :
                            :

     Plaintiffs,        :

                            :       CIVIL ACTION

        v.          :

                            :

TIMOTHY CHELL, et al.,     :       Docket No. 15-3519

                            :

     Defendants.       :
_____ :
_____

BRIEF IN SUPPORT OF THE JUDICIARY DEFENDANTS'
MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and FED. R. (12(b)6)
_____

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. HUGHES JUSTICE COMPLEX
P.O. BOX 93
TRENTON, NEW JERSEY   08625
ATTORNEY FOR DEFENDANTS
(609) 984-4863
Eric.Pasternack@dol.lps.state.nj.us

ERIC S. PASTERNACK
AKEEL A. QURESHI
DEPUTY ATTORNEYS GENERAL
     On the Brief

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...........................................................................1

RELATED CASES AND PROCEEDINGS..........................................................2

PROCEDURAL HISTORY..................................................................................5

STATEMENT OF FACTS ...................................................................................5

STANDARD OF REVIEW ..................................................................................8

      A.    MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(1)8

      B.    MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6)8

ARGUMENT

      POINT I

            BECAUSE THE SUPREME COURT HELD IN *RENO V. FLORES* THAT THE BEST INTERESTS OF THE CHILD STANDARD IS A PROPER AND FEASIBLE CRITERION FOR MAKING CHILD CUSTODY DECISIONS, PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED...................................................................................9

      POINT II

            A PLENARY HEARING IS NOT REQUIRED WHERE THERE ARE NO MATERIAL FACTS IN DISPUTE AND PLAINTIFFS' ARGUMENT TO THE CONTRARY IGNORES PRECEDENT, DEFIES COMMON SENSE, AND SCORNS THE ESTABLISHED PRINCIPLES OF COMITY BETWEEN FEDERAL AND STATE COURTS. ...........................................................................................14

POINT III

  DEFENDANTS DO NOT HAVE ADVERSE LEGAL INTERESTS WITH PLAINTIFFS BECAUSE THEY HAVE ONLY BEEN SUED IN THEIR JUDICIAL CAPACITIES AS NEUTRAL ADJUDICATORS OF THE LAW, THUS DEFENDANTS ARE NOT PROPER PARTIES...........................................................................17

POINT IV

  PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE SUBJECT TO RATIONAL BASIS REVIEW AND MUST BE DISMISSED BECAUSE PLAINTIFFS CANNOT NEGATE EVERY BASIS WHICH MIGHT SUPPORT THE ALLEGED POLICIES CHALLENGED. .................................................................................23

  a. PLAINTIFFS' CLAIM THAT NEW JERSEY COURTS USE SEX-BASED PRESUMPTIONS IS WITHOUT MERIT AND MUST BE DISMISSED. ..........................................................26

  b. PLAINTIFFS CAN NEITHER ESTABLISH THAT THEY HAVE STANDING TO ASSERT A CLAIM THAT PARENTS INVOLVED IN CIVIL CHILD CUSTODY PROCEEDINGS ARE DENIED A RIGHT TO APPOINTED COUNSEL OR THAT THEY HAVE A RIGHT TO SUCH...26

  c. GIVEN THE STATE'S SUBSTANTIAL INTEREST IN DETERMINING ISSUES RELATING TO CUSTODY BASED ON THE BESTS INTERESTS OF THE CHILD STANDARD, PLAINTIFFS CANNOT SATISFY THEIR BURDEN OF SHOWING THAT DOING SO VIOLATES THE EQUAL PROTECTION CLAUSE..................................28

CONCLUSION .......................................................................................30

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Alexander v. Whitman*,
  114 F.3d 1392 (3d Cir. 1997) .................................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................9

*B.S. v. Somerset*,
  704 F.3d 250 (3d Cir. 2013) ...................................................................10

*Barblock v. Barblock*,
  383 N.J. Super. 114 (App.Div. 2006)...................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................9

*Brandon E. ex rel. Listenbee v. Reynolds*,
  201 F.3d 194 (3d Cir. 2000) ......................................... 19, 20, 21, 22

*Brittain v. Hansen*,
  451 F.3d 982 (9th Cir. 2006) ......................................... 11, 12

*Cleburne v. Cleburne Living Center, Inc.*,
  473 U.S. 432 (1985) ..............................................................................24

*Commodity Futures Trading Com. V. Premex, Inc.*,
  655 F.2ds 779 (7th Cir. 1981) .............................................................15

*Common Cause v. Pennsylvania*,
  558 F.3d 249 (3d Cir. 2009) .................................................................27

*Croft v. Westmoreland County of Children and Youth Services*,
  103 F.3d 1123 (3d Cir. 1997) ...............................................................11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ..............................................................................18

*Donatelli v. Mitchell*,
    2 F.3d 508 (3d Cir. 1993) ...................................................................25

*Elliot v. Kiesewetter*,
    98 F.3d 47 (3d Cir. 1996) ....................................................................15

*Fantony v. Fantony*,
    122 A.2d 593 (N.J. 1956) ......................................................................7

*Fed. Commc'ns Comm. v. Beach*,
    508 U.S. 307 (1993) ............................................................................24

*Flast v. Cohen*,
    392 U.S. 83 (1968) ..............................................................................27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) ............................................................................27

*Georgevich v. Strauss*,
    772 F.2d 1078 (3d Cir. 1985) ........................................... 19, 20, 21, 22

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) ..................................................................9

*Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*,
    442 U.S. 1 (1979) ................................................................................21

*Gubernat v. Deremer*,
    657 A.2d 856 (N.J. 1995) ....................................................................26

*Hand v. Hand*,
    917 A.2d 269 (N.J. App. Div. 2007) ....................................................7

*Heller v. Doe*,
    509 U.S. 312 (1993) ............................................................................25

*In re Baby M.*,
    537 A.2d 1227 (N.J. 1988) ....................................................................7

*In re Conrrugated Container Antitrust Litigation*,
  752 F.2d 137 (5th Cir. 1985) ................................................................15

*In re Impounded*,
  178 F.3d 150 (3d Cir. 1999) ................................................................14

*In re Justices of the Supreme Court of Puerto Rico*,
  695 F.2d 17 (1st Cir. 1982) ............................................ 19, 20, 22, 23

*Judkins v. HT Window Fashions Corp.*,
  514 F. Supp. 2d 753 (W.D.Pa. 2007) ..................................................15

*Kinsella v. Kinsella*,
  696 A.2d 556 (N.J. 1997) ....................................................................7

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ....................................................................9

*Kwasnik v. Leblon*,
  228 Fed. Appx. 238 (3d Cir. 2007) ....................................................22

*Lavado v. Keohane*,
  992 F.2d 601 (6th Cir. 1993) ..............................................................28

*Lehnhausen v. Lake Shore Auto Parts Co.*,
  410 U.S. 356 (1973) ............................................................................25

*Lepis v. Lepis*,
  416 A.2d 45 (N.J. 1980) ..................................................................8, 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................27

*Malmed v. Thornburgh*,
  621 F.2d 565 (3d Cir. 1980) ..............................................................25

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ............................................................18

*McCurdy v.* Dodd,
   352 F.3d 820 (3d Cir. 2003) ...............................................................11

*McDonald's Corp. v. Robertson*,
   147 F.3d 1301, 1313 (11th Cir. 1998) ................................................15

*McGowan v. Maryland*,
   366 U.S. 420 (1961) ...........................................................................24

*Miller v. City of Philadelphia*,
   174 F.3d 368 (3d Cir. 1999) ...............................................................11

*Morrissey v. Brewer*,
   408 U.S. 471 (1972) ...........................................................................14

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) .................................................................9

*New York Transit Auth. v. Beazer*,
   440 U.S. 568 (1979) ...........................................................................24

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..................................................................... 16, 17

*Packard v. Provident Nat'l Bank*,
   994 F.2d 1039 (3d Cir. 1993) ...............................................................9

*Palmore v. Sidoti*,
   466 U.S. 429 (1984) ..................................................................... 14, 29

*Parham v. J.R.*,
   442 U.S. 584 (1979) ..................................................................... 13, 28

*Pfeiffer v. Ilson*,
   722 A.2d 966 (N.J. App. Div. 1999) .................................................7, 15

*Plyler v. Doe*,
   457 U.S. 202 (1982) ...........................................................................24

*Pulliam v. Allen*,
    466 U.S. 522, 538 n.18 (1984) ............................................................................19

*Raines v. Byrd*,
    521 U.S. 811 (1997) ........................................................................................18

*Reno v. Flores*,
    507 U.S. 292 (1993) ................................................................ 10, 13, 14, 29

*Sacharow v. Sacharow*,
    826 A.2d 710 (N.J. 2003) ............................................................ 12, 23

*Sammon v. New Jersey Bd. of Medical Examiners*,
    66 F.3d 639 (3d Cir. 1995) ............................................................25

*Santosky v. Kramer*,
    455 U.S. 745 (1982) ................................................................ 10, 11, 12

*Shaw v. Shaw*,
    351 A.2d 374 (N.J. App. 1976) ..........................................................7, 8

*Stanley v. Illinois*,
    405 U.S. 645 (1972) ........................................................................10

*Step-Saver Data Systems, Inc. v. Wyse Tech.*,
    912 F.2d 643 (3d Cir. 1990) ............................................................18

*Storino v. Borough of Point Pleasant Beach*,
    322 F.3d 293 (3d Cir. 2003) ............................................................18

*Stump v. Sparkman*,
    435 U.S. 349 (1978) ........................................................................22

*Terry v. Terry*,
    636 A.2d 579 (N.J. App. Div. 1994) ..................................................7

*Toll Bros., Inc. v. Twp. of Readington*,
    555 F.3d 131, 137 (3d Cir. 2009) ......................................................17

*Travelers Ins. Co. v. Obusek*,
    72 F.3d 1148 (3d Cir. 1995) ...................................................................19

*Troxel v. Granville*,
    530 U.S. 57 (2000) ............................................................... 10, 12, 13

*United States v. Hays*,
    515 U.S. 737 (1995) ...............................................................................27

*Valley Forge Christian Coll. V. Ams. United for Separation of Church & State,
    Inc.*, 454 U.S. 464 (1982) ...................................................................18

*Warth v. Seldin*,
    422 U.S. 490 (1975); ...........................................................................18

*Watkins v. Nelson*,
    748 A.2d 558 (2000).............................................................. 10, 13, 29

*Williamson v. Lee Optical of Oklahoma, Inc.*,
    348 U.S. 483 (1955) .............................................................................26

## Statutes

N.J. Stat. Ann. § 9:2-4.......................................................... 5, 6, 22, 23

N.J. Stat. Ann. § 9:2-4f ........................................................................6

## Rules

N.J. Court R. 2:2-3 ........................................................... 16, 33

## Treatises

10A C. Wright, Miller & M. Kane, *Federal Practice and Procedure* § 2757 (2d ed.
    1983))...................................................................................................18

## Constitutional Provisions

U.S. Const. art. III, § 2 ....................................................................... 17, 19

## PRELIMINARY STATEMENT

The highest court in the land has explained that the United States Constitution allows state courts to use the best interests of the child standard to decide which of two parents will be accorded custody and that the states have a substantial interest in granting custody based on the best interests of the child. Plaintiffs nevertheless allege that Defendants—who are judges of the Superior Court of New Jersey—deprived Plaintiffs of due process by following federal precedent and applying the best interests of the child standard in their respective State court child custody cases. But unless and until the Supreme Court reverses itself, the best interests of the child standard remains a proper and feasible criterion for making child custody decisions.

This tremendous and insurmountable deficiency aside, the Complaint also suffers a variety of other substantive and procedural flaws that compel its dismissal.  First, contrary to Plaintiffs' assertion, the Constitution does not require a plenary hearing in every custody dispute between parents. Under New Jersey law, a plenary hearing is only required where a party makes a *prima facie* showing that there exists a genuine issue of material fact in dispute. New Jersey and federal courts apply the same framework in determining whether to grant requests for plenary hearings, and Plaintiffs' claim that plenary hearings are necessary even where there are no material facts in dispute consequently ignores precedent, defies

common sense, and scorns the established principles of comity between federal and state courts.

Second, the Court should dismiss the Second Amended Complaint for lack of case or controversy because Defendants are sued only in their judicial capacities as neutral adjudicators of the law and thus have no adverse legal interests with Plaintiffs.

Third, Plaintiffs' Equal Protection claims fail because:  (1) New Jersey courts do not use sex-based presumptions to resolve child custody disputes; (2) Plaintiffs can neither establish that there is a right to appointed counsel in civil child custody proceedings nor that they even have standing to assert such a claim; and (3) the Supreme Court has held that the states have a substantial and legitimate interest in resolving  custody disputes between parents using the bests interests of the child standard.

Therefore, Plaintiffs have failed to state a claim upon which relief can be granted and this Court should deny their motion for injunctive relief and grant Defendants' cross-motion to dismiss in its entirety with prejudice.

## **RELATED CASES AND PROCEEDINGS**

In a virtually identical action to the one at hand, Plaintiffs filed a complaint on February 5, 2014 under Civil Action No. 14-760 (the "Edelglass Lawsuit"). (Civil Action No. 14-760, CM/ECF # 1). Plaintiffs then filed their First Amended

Complaint in the Edelglass Lawsuit on April 14, 2014. (Civil Action No. 14-760, CM/ECF # 7). In general, the First Amended Complaint alleged that the Superior Court of New Jersey consistently infringes upon the constitutional rights of fathers in child custody disputes by restricting their access to their children without first providing a fair hearing, and by limiting fathers' rights to free speech and bear arms. (*Id.*, generally). Plaintiffs sought injunctive relief on behalf of all similarly situated individuals in New Jersey, monetary damages, costs and attorney's fees. (*Id.*).

On June 16, 2014, Defendants, the Honorable John L. Call, J.S.C.; the Honorable Patricia B. Roe, J.S.C.; the Honorable Maureen P. Sogluizzo, J.S.C.; the Honorable Catherine M. Fitzpatrick, J.S.C.; the Honorable Lisa P. Thornton, J.S.C.; Michelle M. Smith; and the State of New Jersey, moved to dismiss Plaintiffs' First Amended Complaint. On January 16, 2015, over Plaintiffs' opposition, this Court issued an Order and Opinion dismissing: (1) all claims against the State of New Jersey with prejudice; (2) all of Plaintiff Edelglass's claims with prejudice; (3) all of Plaintiff Graf's claims with prejudice; (3) all of Plaintiff Litton's claims with prejudice; (4) Plaintiff Malhan's claims regarding his custody hearings with prejudice; (5) Plaintiff Malhan's claims regarding the "gag order" without prejudice; (6) Plaintiff Quinlan's claims regarding his custody hearings with prejudice; (7) Plaintiff Quinlan's claims based on the weapons order

without prejudice; and (8) Plaintiff Joshi's claim without prejudice. (Civil Action No. 14-760, CM/ECF # 22, 23).

On January 22, 2015, and March 27, 2015, the Plaintiffs in the Edelglass Lawsuit filed motions to amend their pleadings. (Civil Action No. 14-760, CM/ECF # 24, 27). The Court granted their motion to amend their pleadings on August 5, 2015, (Civil Action No. 14-760, CM/ECF # 28), and they filed their Second Amended Complaint on August 7, 2015. (Civil Action No. 14-760, CM/ECF # 30).

In the Second Amended Complaint, Plaintiffs[1] Anthony Allen, Todd Bennett, Sharir Feldman, Werner Graf, Karl Hagberg, Clifton Hill, Yeshuda Ben Litton, Samir Joshi, Surrender Malhan, Carly Oliver, Antonio Quinlan, and Zia Shaikh, name as Defendants, the Honorable Lawrence P. De Bello, J.S.C.; the Honorable Kathleen M. Delaney, J.S.C.; the Honorable James M. Demarzo, J.S.C.; the Honorable Mdelin F. Einbinder, J.S.C.; the Honorable Christopher J. Garrenger, J.S.C.; the Honorable Severiano Lisboa, J.S.C. (retired); the Honorable Anthony M. Massi, J.S.C.; the Honorable John Tomasello, J.S.C.; the Honorable Sherri L. Schweitzer, J.S.C.; and the Honorable Nancy Sivilli, J.S.C. (Civil Action

---

[1]    To the extent that the Complaint attempts to revive claims on behalf of Scott Edelglass, Werner Graf, Yeshuda Ben Litton, Surrendar Malhn, and Antonio Quinlan, the Court dismissed those claims with prejudice in the Edelglass Lawsuit. (Civil Action No. 14-760, CM/ECF # 23). In the event that the Complaint in this matter is not so attempting, the factual allegations with regard to those individuals should be stricken from the Complaint as irrelevant to the claims of the Plaintiffs.

No. 14-760, CM/ECF # 27). Plaintiffs allege in the Second Amended Complaint that Defendants violated Plaintiffs' fundamental rights by stripping them of their parental rights without due process contrary to the First, Second and Fourteenth Amendments. *Id.* Defendants also allege that the best interests of the child standard is unconstitutional and that fathers are denied equal protection of the law. *Id.*

## PROCEDURAL HISTORY

While the Edelglass Lawsuit was pending, Plaintiffs Allen, Bennett, Feldman, Hagberg, Hill, Oliver, and Shaikh filed a second, virtually identical lawsuit in this Court under Civil Action No. 15-3519 (the "Allen Complaint"). Just as they do in the Edelglass Lawsuit, Plaintiffs allege in the Allen Complaint that the best interests of the child standard is unconstitutional, that fathers are denied equal protection of the law, and that Defendants violated Plaintiffs' fundamental rights by stripping them of their parental rights without due process.

## STATEMENT OF FACTS

With the enactment of N.J. Stat. Ann. § 9:2-4, the Legislature declared that the public policy of the State is "to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." The rights of both parents shall be equal in any proceeding involving the custody of a minor

child during which, a court may order joint custody, "sole custody to one parent with appropriate parenting time for the noncustodial parent," or "any other custody arrangement as the court may determine to be in the best interests of the child." Id.

In making a custody determination, courts may consider a broad range of factors, including the needs of the child, the parents' ability to cooperate in matters relating to the child, the interaction and relationship of the child with his or her parents and siblings, the history of domestic violence, the fitness of the parents, the parents' employment responsibilities, and the stability of the home environment. N.J. Stat. Ann. § 9:2-4(c). A court making a custody determination must make a record of its reasoning for the custody determination and "must reference the pertinent statutory criteria with some specificity." N.J. Stat. Ann. § 9:2-4f; *Terry v. Terry*, 636 A.2d 579, 587 (N.J. App. Div. 1994).

When making a custody determination, "the primary and overarching consideration is the best interest of the child." *Kinsella v. Kinsella*, 696 A.2d 556, 577 (N.J. 1997) (citing *Fantony v. Fantony*, 122 A.2d 593, 598 (N.J. 1956)). "The best-interest analysis is an additional requirement 'superimposed upon an analysis of the statutory scheme.'" *Kinsella*, 696 A.2d at 577 (quoting *Terry*, 636 A.2d at 587 ). "The custody decision must be based on all circumstances, on everything that actually has occurred, on everything that is relevant to the child's best interests." *In re Baby M.*, 537 A.2d 1227, 1258 (N.J. 1988).

"[A] plenary hearing is not necessary in every case . . . , but rather only where a *prima facie* showing has been made that a genuine issue of fact exists 'bearing upon a critical question such as the best interests of the children, interference with parental rights, or the existence of a good faith reason to move.'" *Pfeiffer v. Ilson*, 722 A.2d 966, 967 (N.J. App. Div. 1999). In other words, a "plenary hearing is required when the submissions show there is a genuine and substantial factual dispute regarding the welfare of the children, and the trial judge determines that a plenary hearing is necessary to resolve the factual dispute." *Hand v. Hand*, 917 A.2d 269, 271 (N.J. App. Div. 2007) (citing *Shaw v. Shaw*, 351 A.2d 374, 376 (N.J. App. 1976)). Thus, "[i]t is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required." *Shaw*, 351 A.2d at 376. For example, in a matter where a father sought review of a trial court order allowing the mother of the parties' children to remove them from New York to New Jersey without a plenary hearing, the Appellate Division found that a plenary hearing was not required in the case as the trial judge had heard extensive oral argument on the motion, considered all of the written submissions by the parties, and concluded that the ex-husband had failed to show adequate proof that there was a genuine issue of fact to warrant a trial. *Barblock v. Barblock*, 383 N.J. Super. 114, 123-24 (App.Div. 2006). The

court found that it saw "no reason to vacate the removal order and compel a plenary hearing that would only disrupt the lives of the parties and their children and be very unlikely to lead to a different outcome." *Id.* at 127. "Without such a standard, courts would be obligated to hold hearings on every modification application." *Lepis v. Lepis*, 416 A.2d 45, 55 (N.J. 1980).

## STANDARD OF REVIEW

### A.   MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction requires that the court consider the allegations of the complaint as true and make all reasonable inferences in plaintiff's favor. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "[T]he person asserting jurisdiction bears the burden of showing that the case is properly before the Court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

### B.   MOTION TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6)

Although a court must accept all facts alleged in the complaint as true, *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993), a court is not bound to accept as true a legal conclusion couched as a factual allegation. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### POINT I

**BECAUSE THE SUPREME COURT HELD IN *RENO V. FLORES* THAT THE BEST INTERESTS OF THE CHILD STANDARD IS A PROPER AND FEASIBLE CRITERION FOR MAKING CHILD CUSTODY DECISIONS, PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED.**

In a dispute between two parents, each sharing the right to make decisions concerning the care, custody and control of their children, the best interests of the child standard "is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody." *Reno v. Flores*, 507 U.S. 292, 303-04 (1993); *Watkins v. Nelson*, 748 A.2d 558, 568 (2000). Plaintiffs simply ignore this black letter law. Instead, they infer from decisions involving disputes

between parents and third parties or the State that due process mandates the use of the clear and convincing evidence standard anytime a parent is deprived of the care, custody, or control of his or her children. But none of these decisions involve disputes between parents, nor call into question the use of the best interests of the child standard to resolve disputes between two fit parents. *See Troxel v. Granville*, 530 U.S. 57 (2000) (grandparents petitioned court for visitation rights to grandchild over parent's objection); *Santosky v. Kramer*, 455 U.S. 745 (1982) (state termination of parental rights proceeding); *Stanley v. Illinois*, 405 U.S. 645 (1972); *B.S. v. Somerset*, 704 F.3d 250 (3d Cir. 2013) (county removed daughter from mother's custody); *McCurdy v.* Dodd, 352 F.3d 820 (3d Cir. 2003) (father unsuccessfully sued police officers alleging that they deprived him of his fundamental interest in the companionship with his adult son); *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999) (discussing whether education program mandated by a prosecutor usurped parent's fundamental rights to raise her child without undue influence from the state); *Croft v. Westmoreland County of Children and Youth Services*, 103 F.3d 1123 (3d Cir. 1997) (county official directed father to leave his home and separate himself from his daughter while child abuse investigation was ongoing).

Plaintiffs claim that disputes between parents are no different than actions brought by the State to terminate parental rights. (Pl. Compl., ¶ 296). They are

wrong. *See Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006). In actions brought by the State to terminate parental rights due to child abuse, the State is required to prove abuse or neglect by clear and convincing evidence. *Santosky*, 455 U.S. at 769-70. "Such hearings necessarily are adversarial in nature, with the government bringing accusations of fault against parents." *Brittain*, 451 F.3d at 989 (quoting *Santosky*, 455 U.S. at 748, 759-62 ("[T]he fact finding stage of a state-initiated permanent neglect proceeding bears many of the indicia of a criminal trial")). And it is because the government initiates such proceedings, that heightened constitutional scrutiny is required. *Santosky*, 455 U.S. at 756; *Brittain*, 451 F.3d at 989-90.

In contrast, where the dispute is between parents, there are "no government accusations of fault or the government acting an adversarial role against the parents." *Brittain*, 451 F.3d at 990. "Rather, by submitting their dispute to [a] court, it is the parties themselves who essentially seek the impairment of each other's rights." *Sacharow v. Sacharow*, 826 A.2d 710, 721 (N.J. 2003). "In that circumstance, the State is thrust into the role of mediator by necessity" and each of the parties is seen as assenting to the possibility that there will be some curtailment of what would otherwise be the ordinary rights concomitant to parenthood." *Id.* Thus, disputes between parents neither involve the government in a prosecutorial

role, as is seen in child abuse cases, nor require heightened constitutional scrutiny. *Brittain*, 451 F.3d at 990.

Plaintiffs similarly err by equating disputes between parents with those between a parent and a third party, as was seen in *Troxel*. In that case, grandparents petitioned a Washington court for visitation rights to their grandchildren in accordance with a statute that permitted "any person to petition the superior court for visitation rights "at any time," and authorized the court to grant such visitation rights whenever visitation would "serve the bests interest of the child." *Troxel*, 530 U.S. at 60-61. In awarding the grandparents visitation rights to the children over the objection of their mother, the court placed the burden on the custodial parent to disprove that visitation would be in the best interest of her daughters. *Id.* at 69-70 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)). The court's decisional framework thus "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* And for that reason, the Supreme Court found the statute unconstitutional as applied because it denied the parent's decision any presumption of validity and instead placed the "best-interest determination solely in the hands of the judge." *Id.* at 67.

The Court's focus on the fact that the Washington statute permitted "any person" to petition a court for visitation rights over the objection of a parent confirms that it is the relationship of the child to the person seeking custody that

determines the standard to be used in any particular case. As such, *Troxel* and *Reno* can be read in harmony. Where a dispute is between a fit parent and a third party, *Troxel* instructs that the traditional presumption that a fit parent will act in the best interest of his or her child applies. *Troxel* 530 U.S. at 69-70. But if the dispute is between two parents, *Reno* mandates the use of the best interests of the child standard because "both parents are presumed to be equally entitled to custody." *Reno*, 507 U.S. at 303-04; *Watkins*, 748 A.2d at 568.

"The goal of granting custody based on the best interests of the child is indisputably a substantial government interest . . . ." *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984). Plaintiffs might not agree, but until the Supreme Court reverses its decision in *Reno*, the best interests of the child standard remains "a proper and feasible criterion for making the decision as to which of two parents will be accorded custody." *Reno*, 507 U.S. at 303-04.

## POINT II

## A PLENARY HEARING IS NOT REQUIRED WHERE THERE ARE NO MATERIAL FACTS IN DISPUTE AND PLAINTIFFS' ARGUMENT TO THE CONTRARY IGNORES PRECEDENT, DEFIES COMMON SENSE, AND SCORNS THE ESTABLISHED PRINCIPLES OF COMITY BETWEEN FEDERAL AND STATE COURTS.

Plaintiffs are not entitled to a plenary hearing as a matter of course in their state court child custody disputes.  A plenary hearing is only required under New Jersey law where a *prima facie* showing has been made that there is a genuine issue of material fact in dispute. The Constitution does not require the use of a plenary hearing absent such a finding, and for good reason.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). It does not require a plenary hearing in all instances. *In re Impounded*, 178 F.3d 150 (3d Cir. 1999). Rather, the circumstances under which a plenary hearing is required are much more circumscribed. A plenary hearing is only required once a *prima facie* showing has been made that a genuine issue of material fact exists. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) ("where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing"); *Elliot v. Kiesewetter*, 98 F.3d 47, 53-54 (3d Cir. 1996) ("A decision [to enter an

order] may be based on affidavits and other documentary evidence if the facts are undisputed and the relevant factual issues are resolved."); *In re Conrrugated Container Antitrust Litigation*, 752 F.2d 137, 142 (5th Cir. 1985) (noting that a plenary hearing is required when there is a material factual dispute);  *Commodity Futures Trading Com. V. Premex, Inc.*, 655 F.2d 779, 782 n.2 (7th Cir. 1981) (finding that the refusal to grant a full evidentiary hearing did not constitute a due process denial); *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D.Pa. 2007) (observing that if there is a dispute of material fact, the court must conduct a plenary hearing).

Consistent with federal jurisprudence, New Jersey law only requires a plenary hearing once "a *prima facie* showing has been made that a genuine issue of fact exists 'bearing upon a critical question such as the best interest of the children, [or] interference with parental rights[.]'" *Pfeiffer*, 772 A.2d at 967. Plaintiffs may not agree with this framework, but that is of no moment. Without such a standard, courts would be exposed to the significant burden of having to hold hearings on every issue and application that comes before them. *Lepis*, 416 A.2d at 55.

Because New Jersey and federal courts apply the same framework in determining whether to grant requests for plenary hearings, the award of injunctive or declaratory relief in this matter would serve no end as it would be neither necessary nor useful to compel New Jersey courts to do what is already done.

While Plaintiffs may speculate that future requests for plenary hearings may be improperly denied, if that occurs, there is a remedy available: they may appeal the decision pursuant to N.J. Court R. 2:2-3. And though Plaintiffs may feel it convenient to invoke this Court's jurisdiction to insure that such decisions are decided correctly, it is not the role of this Court to preemptively enjoin such state judicial actions as doing so would require "monitoring of state court functions that is antipathetic to established principles of comity." *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974).

In *O'Shea*, nineteen individuals sued two judges alleging that the judges "'have engaged in and continue to engage in, a pattern and practice of conduct . . . all of which has deprived and continues to deprive plaintiffs and members of their class of their' constitutional rights and, again, that [the judges] 'have denied and continue to deny to plaintiffs and members of their class their constitutional rights' by illegal bondsetting, sentencing, and jury-fee practices." *Id.* at 495. Much like the plaintiffs in *O'Shea*, the Plaintiffs in this case seek injunctive and declaratory relief "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future" child custody determinations. *Id.* at 500. But a "federal court should not intervene to establish the basis for future invention that would be so intrusive and unworkable." *Id.* To hold otherwise would require the continuous supervision by the federal court over the conduct of the State courts in

the course of future child custody proceedings involving any of the members of Plaintiffs' broadly defined class. *Id.* Consequently, just as the Supreme Court did in *O'Shea*, this Court should find that Plaintiffs have failed to state an adequate claim to injunctive or declaratory relief and their Complaint should be dismissed accordingly.

**POINT III**

**DEFENDANTS DO NOT HAVE ADVERSE LEGAL INTERESTS WITH PLAINTIFFS BECAUSE THEY HAVE ONLY BEEN SUED IN THEIR JUDICIAL CAPACITIES AS NEUTRAL ADJUDICATORS OF THE LAW, THUS DEFENDANTS ARE NOT PROPER PARTIES.**

As judicial officers, Defendants have no adverse legal interests with Plaintiffs to satisfy the requirements of Article III's case or controversy requirement.

"Article III of the Constitution limits federal 'judicial Power' to the adjudication of 'Cases' or 'Controversies.'" *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (discussing U.S. Const. art. III, § 2).  This limitation, which is "essential to our system of separated powers[,]" protects and preserves the principle of dual sovereignty in cases involving state or local government. *Id.* (citing *Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473-74 (1982); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 300 (3d Cir. 2003)). "Without a case-or-

controversy requirement, the judicial power would 'extend[] to every question under the constitution,' and 'the other departments would be swallowed up by the judiciary.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). "With the case-or-controversy requirement, on the other hand, courts stay confined to their proper—and properly limited—role,' of 'decid[ing] on the rights of individuals[.]'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)). "There is, therefore, '[n]o principle . . . more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

"For there to be an actual controversy[,] the defendant must be so situated that the parties have adverse legal interests." *Step-Saver Data Systems, Inc. v. Wyse Tech.*, 912 F.2d 643, 648 (3d Cir. 1990) (quoting 10A C. Wright, Miller & M. Kane, *Federal Practice and Procedure* § 2757, at 582-83 (2d ed. 1983)). Ordinarily, it will suffice that a "harm will result if [a] declaratory judgment is not entered" to establish the adversity of interests. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). However, no case or controversy exists in cases involving judges "sued in their judicial capacity as neutral adjudicators of disputes." *Georgevich v. Strauss*, 772 F.2d 1078, 1087 (3d Cir. 1985) (en banc), *cert. denied,* 475 U.S. 1028 (1986); *Brandon E. ex rel. Listenbee v. Reynolds*, 201

F.3d 194, 199 (3d Cir. 2000). *See also In re Justices of the Supreme Court of Puerto Rico*, 695 F.2d 17, 21-22 (1st Cir. 1982). Article III, thus, imposes limitations on the availability of injunctive and declaratory relief against judges. *Pulliam v. Allen*, 466 U.S. 522, 538 n.18 (1984) (recognizing distinction between judicial immunity and the absence of Article III case or controversy).

The First Circuit's decision in *In re Justices* is a seminal case on this subject. *Brandon*, 201 F.3d at 198. In that case, five attorneys sued the justices of the Supreme Court of Puerto Rico challenging the constitutionality of state statutes requiring members of the bar to pay dues. *In re Justices*, 695 F.2d at 18-19. In seeking a writ of mandamus from the First Circuit ordering the district court to dismiss the complaint against them, the justices argued that the action presented no case or controversy as "they and the plaintiffs possess no such 'adverse legal interests," for the justices' only function concerning the statutes being challenged is to act as neutral adjudicators rather than as administrators, enforcers or advocates." *Id.* at 21. In concluding that the claim against the justices presented no case or controversy, the First Circuit opined that

> ordinarily, no "case or controversy" exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute. Judges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy. They are sworn to uphold the Constitution of the United States. They will consider and decide a claim that a statute or Commonwealth statute violates the federal

> Constitution without any interest beyond the merits of the
> case.
>
> [*Id.*]

For these reasons, the First Circuit held that the complaint against the justices should be dismissed for failure to state a claim because the justices were named only in their official capacities as neutral arbiters. *Id.* at 22.

Although the Third Circuit held that judges were amenable to suit in *Georgevich*, the Third Circuit has cited *In re Justices* with approval and "recognized the impropriety of such suits where the judge acted as an adjudicator rather than an enforcer or administrator of a statute." *Brandon*, 201 F.3d at 199 (citing *Georgevich*, 772 F.2d at 1088).  In *Georgevich*, a class of state prisoners brought suit under § 1983 against a class of state court judges alleging that they had not received the same parole procedures as other similarly situated prisoners in violation of the Equal Protection Clause. 772 F.2d at 1087. The judges in *Georgevich*, like the justices in *In re Justices*, argued that they were not proper parties under § 1983 because they were not enforcers of the parole statutes and consequently had interests adverse to the prisoners. *Id.* The Third Circuit rejected this argument, finding that Pennsylvania's statutory scheme "divides the authority to make parole decisions between the sentencing judges and the Board" and that "there is no reason why the Board, but not the judges, may be sued on a similar challenge." *Id. See, e.g.*, *Greenholtz v. Inmates of Nebraska Penal & Corr.*

*Complex*, 442 U.S. 1 (1979) (finding that suit was proper against members of Parole Board).

Following *Georgevich*, the Third Circuit considered whether judges were proper parties to a suit challenging the constitutionality of a state statute in *Brandon*, 201 F.3d at 197. In that case, the plaintiffs filed suit against county judges responsible for presiding over actions brought under a Pennsylvania statute that was implemented to assist parents in obtaining treatment for minors afflicted with a drug or alcohol dependency as part of a constitutional challenge to the statute. 201 F.3d at 195. Recognizing that the judges do not initiate the proceedings against the minors and that the statute requires the judges to hold hearings and make determinations involving "mixed questions of law and fact typical to the adjudicative setting," the Third Circuit found that judges were neutral adjudicators and not enforcers or administrators of the statute being challenged and thus not amenable to suit. *Id.* at 199.

The Third Circuit's opinions in *Georgevich* and *Brandon* demonstrate that courts look to the nature of the act performed by the judge, "*i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). If a judge performs a non-judicial act such as rendering a parole decision then a case or controversy exists. *Georgevich*, 772 F.2d at 1087-88.

But where a judge holds hearings and makes determinations involving "mixed questions of law and fact typical to the adjudicative setting," the judge's position will simply not be adverse to the litigants before him or her. *Brandon*, 201 F.3d at 199-200.

Defendants were surely performing an adjudicatory function in presiding over Plaintiffs' respective custody disputes and they are consequently not proper defendants for Plaintiffs' challenges to N.J. Stat. Ann. § 9:2-4, which establishes the best interests of the child standard shall apply in civil child custody proceedings. *See Kwasnik v. Leblon*, 228 Fed. Appx. 238, 243 (3d Cir. 2007) (finding that judge was performing judicial function and entitled to judicial immunity where judge denied plaintiff custody and visitation rights to his son pursuant to N.J. Stat. Ann. § 9:2-4). Indeed, as judges of the Superior Court of New Jersey, Defendants "sit as arbiters without a personal or institutional stake on either side of the constitutional controversy." *In re Justices*, 695 F.2d at 21. Defendants also did not play any role in the enactment of N.J. Stat. Ann. § 9:2-4. *In re* Justices, 695 F.2d at 21. Nor did they initiate any of the proceedings involving Plaintiffs. *In re* Justices, 695 F.2d at 21. *See, e.g.*, *Sacharow v. Sacharow*, 826 A.2d 710, 721 (N.J. 2003) ("by submitting their dispute to the court, it is the parties themselves who essentially seek the impairment of each other's rights" and "[i]n that circumstance, the State is thrust into the role of

mediator by necessity"). And finally, Defendants "do not . . . have an institutional interest in following their prior decisions (if any) concerning" the constitutionality of N.J. Stat. Ann. § 9:2-4 "if an authoritative contrary legal determination is subsequently been made." *In re* Justices, 695 F.2d at 21.

Accordingly, Defendants are not proper parties to this action because they are sued only in their judicial capacities as neutral adjudicators of disputes.

<u>**POINT IV**</u>

**PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE SUBJECT TO RATIONAL BASIS REVIEW AND MUST BE DISMISSED BECAUSE PLAINTIFFS CANNOT NEGATE EVERY BASIS WHICH MIGHT SUPPORT THE ALLEGED POLICIES CHALLENGED.**

Plaintiffs' Equal Protection claims must be dismissed because (1) the best interests of the child standard is constitutional, (2) New Jersey courts do not use sex-based presumptions in deciding custody disputes, and (3) parents do not have a right to appointed counsel in civil proceedings.

The Equal Protection Clause is essentially a directive that all similarly situated individuals be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A rule that applies "evenhandedly to all persons within the jurisdiction unquestionably" complies with the Equal Protection Clause. *New York Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979).  It is only when a state "adopts a rule that has a special impact on less than all persons subject to its jurisdiction"

that a question arises as to whether the equal protection clause is violated. *Id.* at 587-88.

The Equal Protection Clause "does not require that things which are different in fact be treated in law as though they are the same." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). The Fourteenth Amendment therefore "permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). Given this discretion, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Commc'ns Comm. v. Beach*, 508 U.S. 307, 313 (1993). Put another way, strict scrutiny "has generally been applied to two types of equal protection claims: (1) where the challenged action or legislation involves a 'suspect' classification, i.e. a classification based on race, alienage, or national origin; and (2) where the challenged action infringes on fundamental constitutional rights, such as the right to travel or rights protected by the First Amendment." *Donatelli v. Mitchell*, 2 F.3d 508, 513 (3d Cir. 1993). "Strict scrutiny is applied in such cases because classifications that are based on race or that infringe on fundamental constitutional rights, are presumptively invalid and will not often be justified by a legitimate state interest." *Id.*

The parameters of the rational basis inquiry are well-established. "A statute is presumed constitutional and 'the burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it.'" *Heller v. Doe*, 509 U.S. 312, 320 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). "This standard of review is a paradigm of judicial restraint." *Beach Commc'ns, Inc.*, 508 U.S. at 314. "In reviewing a state statute or constitutional provision under the due process or equal protection clause, a court must determine if the provision rationally furthers any legitimate state objective." *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980). "[I]t is entirely irrelevant whether this reasoning in fact underlay the legislative decision." *Id.* (quoting *Flemming v. Nestor*, 363 U.S. 603, 611 (1960)). Moreover, "[t]he legitimate purpose justifying the provision need not be the primary purpose of the provision." *Id.* "A court engaging in rational basis review is not entitled to second guess the legislature on the factual assumptions or policy considerations underlying the statute." *Sammon v. New Jersey Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995). Finally, "[t]he law need not be in every respect consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 347-48 (1955).

a.  **PLAINTIFFS' CLAIM THAT NEW JERSEY COURTS USE SEX-BASED PRESUMPTIONS IS WITHOUT MERIT AND MUST BE DISMISSED.**

New Jersey courts no longer use sex-based presumptions, such as the "tender years doctrine," to resolve child custody disputes. *Gubernat v. Deremer*, 657 A.2d 856, 866 (N.J. 1995). "The Legislature clearly has ended gender-based differences in marital and parental rights, whether rooted in law or custom, and instead determined that parental disputes about children should be resolved in accordance with each child's best interests." *Id.* Therefore, the best interests of the child standard governs and Plaintiffs' claim that New Jersey courts favor mothers over fathers in child custody disputes is entirely without merit and must be dismissed.

b.  **PLAINTIFFS CAN NEITHER ESTABLISH THAT THEY HAVE STANDING TO ASSERT A CLAIM THAT PARENTS INVOLVED IN CIVIL CHILD CUSTODY PROCEEDINGS ARE DENIED A RIGHT TO APPOINTED COUNSEL OR THAT THEY HAVE A RIGHT TO SUCH.**

Plaintiffs contend that indigent litigants in civil divorce and child custody proceedings are denied equal protection because they do not receive appointed council like indigent parents do in abuse and neglect proceedings. (Pl. Compl., ¶¶ 301-303). However, Plaintiffs can neither establish that they have standing to assert this claim nor that they have a right to appointed counsel in civil child custody proceedings.

In order for an action to constitute a "Case" or "Controversy," the plaintiff who instituted the action must have "standing." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). The Supreme Court has confirmed the well-established elements necessary to establish standing as required by Article III of the Constitution:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> [*United States v. Hays*, 515 U.S. 737, 742-43 (1995) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).]

Such standing must be demonstrated separately for each form of relief sought, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000), and it is not enough to assert a generalized, abstract grievance shared by a large number of similarly situated people. *Common Cause v. Pennsylvania*, 558 F.3d 249, 258-260 (3d Cir. 2009).

Here, Plaintiffs claim indigent parents are denied appointed council in civil divorce and child custody proceedings. (Pl. Compl., ¶¶ 301-303). But none of the Plaintiffs have alleged (1) that a court has found them to be indigent, (2) that they have requested the appointment of counsel, or (3) that a request for the appointment of counsel had been denied. Therefore, Plaintiffs' right to counsel

claim must be dismissed for lack of standing because they assert only a generalized, abstract grievance and not an actual, concrete injury. *See Mosby v. Ligon*, 418 F.3d 927, 933-34 (8th Cir. 2005) .

Plaintiffs' claim must also be dismissed because they neither assert that indigent parents are denied the purported right to counsel on the basis of their gender nor identify a fundamental right to appointed counsel in civil divorce and child custody proceedings. In contrast to criminal proceedings, the appointment of counsel in a civil case is not a constitutional right under the federal Constitution. *Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Therefore, Plaintiffs' Equal Protection claim must also be dismissed because Plaintiffs cannot negate every conceivable basis that might support the distinction made between State-initiated actions to terminate parental rights and civil divorce and custody proceedings.

    **c.**    **GIVEN THE STATE'S SUBSTANTIAL INTEREST IN DETERMINING ISSUES RELATING TO CUSTODY BASED ON THE BESTS INTERESTS OF THE CHILD STANDARD, PLAINTIFFS CANNOT SATISFY THEIR BURDEN OF SHOWING THAT DOING SO VIOLATES THE EQUAL PROTECTION CLAUSE.**

Plaintiffs also contend that the use of the best interests of the child standard in child custody proceedings violates the Equal Protection clause because an extraordinary circumstances test is used in State-initiated termination of parental

rights proceedings. Plaintiffs' Equal Protection claim thus parallels their Due Process Claim in that they argue that the use of the best interests of the child standard affects their fundamental rights to make decisions concerning the care, custody and control of their children. But, as discussed earlier, the best interests of the child standard "is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody." *Reno*, 507 U.S. at 303-04; *Watkins*, 748 A.2d at 568. Therefore, the best interests of the child standard is subject only to rational basis review. *Alexander v. Whitman*, 114 F.3d 1392, 1407-08 (3d Cir. 1997) (applying rational basis review to Equal Protection challenge where it paralleled a Substantive Due Process claim that did not violate a fundamental right). The State has a substantial interest in granting custody based on the best interests of the child, *Palmore*, 466 U.S. at 433; and therefore, the best interests of the child standard survives rational basis review and Plaintiffs' Equal Protection claim must be dismissed with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss should be granted

with prejudice.

Respectfully submitted,

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:   <u>s/ Eric S. Pasternack</u>
Eric S. Pasternack
Deputy Attorney General


Dated: September 21, 2015